Nicholas Ranallo, Attorney at Law
SBN 275016
371 Dogwood Way
Boulder Creek, CA 95006
Phone: (831) 703 -4011
Fax:    (831) 533 – 5073
nick@ranallolawoffice.com

Christopher E. Gatewood
(*Pro hac vice pending*)
Threshold Counsel, PC
1905 Huguenot Road, Suite 200
Phone: (804) 677-0947
Fax:    (804) 482-2641
chris@thresholdcounsel.com

*Attorneys for Defendant The Income Tax School, Inc.*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LOPEZ TAX SERVICE, INC.,  CARLOS C. LOPEZ,  KRISTEENA S. LOPEZ,  LATINO TAX PROFESSIONALS ASSOCIATION, LLC <br>           Plaintiffs, <br>       vs. <br> THE INCOME TAX SCHOOL, INC. <br>          Defendant | Case No.: 3:12-cv-2654-EDL <br><br> DEFENDANT THE INCOME TAX SCHOOL INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER OR STAY <br><br> Date: August 28, 2012 <br> Time: 9:00 A.M. |

### DEFENDANT THE INCOME TAX SCHOOL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT OR TO TRANSFER OR STAY

PLEASE TAKE NOTICE that on Tuesday, August 28, at 9:00 a.m. Defendant The Income Tax School, Inc. ("ITS"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12 and other governing law, shall appear before the Honorable United States Magistrate Judge Elizabeth LaPorte at the San Francisco Courthouse, Courtroom E – 15th Floor located at 450 Golden Gate Avenue, San Francisco, CA 94102 and will present its Motion to Dismiss Plaintiffs' Complaint, or to transfer or stay this matter.

For the reasons more fully described below, Defendant ITS seeks dismissal of Plaintiff's complaint as a result of Defendant's first-filed action in the Eastern District of Virginia as to Count I, and Plaintiffs' failure to state a claim under Fed. R. Civ. P. 12(b)(6) and failure to establish jurisdiction under the Declaratory Judgment Act at 28 U.S.C. § 2201, and in the alternative Defendant seeks a transfer or a stay of this action in light of the first-filed case in the Eastern District of Virginia, and motions pending there.

Nicholas Ranallo, Attorney at Law
SBN 275016
371 Dogwood Way
Boulder Creek, CA 95006
Phone: (831) 703 -4011
Fax:    (831) 533 – 5073
nick@ranallolawoffice.com

Christopher E. Gatewood
(*Pro hac vice pending*)
Threshold Counsel, PC
1905 Huguenot Road, Suite 200
Phone: (804) 677-0947
Fax:    (804) 482-2641
chris@thresholdcounsel.com

*Attorneys for Defendant The Income Tax School, Inc.*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LOPEZ TAX SERVICE, INC.,  CARLOS C. LOPEZ,  KRISTEENA S. LOPEZ,  LATINO TAX PROFESSIONALS ASSOCIATION, LLC<br><br>          Plaintiffs,<br><br>   vs.<br><br>THE INCOME TAX SCHOOL, INC.<br>        Defendant | Case No.: 3:12-cv-2654-EDL<br><br>DEFENDANT THE INCOME TAX SCHOOL INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER OR STAY<br><br>Date: August 28, 2012<br>Time: 9:00 A.M. |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

ITS sued the Plaintiffs, its former licensee and its individual owners and a related spin-off entity, for infringing materials they had previously licensed. Three weeks after that first-filed action was filed in the Eastern District of Virginia, the plaintiffs filed this action.

Because jurisdiction over these Plaintiffs exists in Virginia, and because the second count presents no actual controversy, fails to satisfy the Declaratory Judgment Act, and fails to state a cause of action on which relief may be granted, this case should be dismissed or transferred as duplicative, or in the very least should be stayed pending the decision of the Eastern District of Virginia, to avoid duplicative litigation and the possibility of inconsistent results.

A hearing is scheduled for July 13, 2012 in the Eastern District of Virginia, on the Plaintiffs' motion to dismiss or transfer that first-filed action.

**FACTUAL BACKGROUND**

For approximately eight years, plaintiff Lopez Tax Service, Inc. ("Lopex Tax") was a licensee of Virginia-based ITS, for ITS's tax preparers' training and learning publications. After Lopez Tax ceased licensing the tax training works from ITS, plaintiffs Lopez Tax, its spin-off publishing and training business Latino Tax Professionals Association, LLC ("LTPA"), and its owners Mr. and Mrs. Lopez, have infringed ITS works by actions that include copying the ITS works, selling copies of them to third parties, and in some cases making derivative works of them. Accordingly, on May 2, 2012, ITS sued these four parties for copyright infringement. See Exhibit 1, the ITS Complaint.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Does personal jurisdiction over these Plaintiffs exist in Virginia, so that this declaratory judgment action regarding copyright infringement is properly dismissed or transferred in favor of the first-filed action in the Eastern District of Virginia?

2. Is Plaintiffs' declaratory judgment count regarding a defamation claim that has been neither made nor threatened properly dismissed under Rule 12(b)(6) or the Declaratory Judgment Act?

3. Does Plaintiffs' separate insurance coverage dispute make any difference?

**ARGUMENT**

**I.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED, TRANSFERRED, OR STAYED IN FAVOR OF THE FIRST-FILED SUIT IN E.D. VA.**

**A. Jurisdiction Exists in Virginia, to Which First-Filed Case This Court Should Defer.**

Ninth Circuit case law consistently favors the first-filed suit, and encourages the second court to follow the lead of the first court to decide the issue.  "The principles of comity allow a district court to decline jurisdiction over an action where a complaint involving the same parties and issues has already been filed in another district."  Barapind v. Reno, 225 F.3d 1100 (9th Cir. 2000) (citing Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622 (9th Cir. 1991).  Here, with the jurisdictional and venue matters first presented to the Eastern District of Virginia as part of that first-filed case, precedent suggests that this Court should defer to the analysis and determinations made in the first-filed case.

> [N]ormally [the first-filed argument] should be addressed to the court in the first-filed action.  Apprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for our consideration. … The court in the second-filed action is not required to duplicate this inquiry.

Alltrade, 946 F.2d 622 (citing Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d,93, 96 (9th Cir. 1982).  Following this Ninth Circuit precedent will prevent the likelihood of conflicting results or of duplicative litigation.

For the Virginia court considering the matter, personal jurisdiction over these Plaintiffs in the first-filed action depends upon satisfaction of Virginia's long-arm statute and Due Process

considerations.  Virginia's long-arm statute has been construed to extend personal jurisdiction to the full extent permitted by the Due Process Clause, and, as a result, the "statutory and constitutional inquiries coalesce into the question of whether [defendants] had sufficient minimum contacts with Virginia to satisfy due process requirements."  <u>Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners</u>, 229 F.3d 448, 450 (4th Cir. 2000).  The Due Process analysis considers whether "the defendant's conduct and connection with the State are such that he should reasonably anticipate being haled into court there."  <u>Verizon Online Servs. v. Ralsky</u>, 203 F. Supp. 2d 601, 612 (E.D. Va. 2002).

ITS has sufficient support for either specific or general jurisdiction in Virginia.  Under the familiar standards,

> [a] court may exercise either general or specific personal jurisdiction. In either case, a non-resident defendant must have "certain minimum contacts with [Virginia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Consulting Eng'rs Corp.</u>, 561 F.3d at 277. To satisfy that standard with respect to general jurisdiction, a non-resident defendant's activities must be "continuous and systematic" in the forum state and the plaintiff must demonstrate "fairly extensive" minimum contacts with that state. <u>See</u> <u>Nichols v. CD. Searle & Co.</u>, 991 F.2d 1195, 1199 (4th Cir. 1993). On the other hand, specific personal jurisdiction requires only that a non-resident defendant "purposefully directed his activities at the residents of the forum" and that the plaintiff's causes of action "arise[s] out of those activities." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462,472 (1985).

<u>Power Paragon v. Precision Technology USA</u>, 605 F.Supp.2d 722 (E.D. Va. 2008).

As plaintiff in the first-filed action, ITS bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence.  <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989).  In this case, where the parties have foregone jurisdictional discovery and an evidentiary hearing, ITS need only establish a *prima facie* case of personal jurisdiction.  <u>Mylan Labs., Inc. v. Akzo, N.V.</u>, 2 F.3d 56, 60 (4th Cir. 1993).

ITS submits to this Court the factual declaration and accompanying documents that are already under consideration by the Eastern District of Virginia, as Exhibit 2 to this memorandum.

**B.  The Virginia Court Has Specific Personal Jurisdiction Over the Defendants.**

Specific personal jurisdiction over these Plaintiffs in the first-filed Virginia case requires only that a non-resident defendant "purposefully directed his activities at the residents of the forum" and that ITS's claim "arise[s] out of those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). This is a case for copyright infringement. ITS's claims arise out of the defendants' access, initial licensed use, and subsequent widespread infringement of ITS's copyright-protected works. Those actions began with defendants' communications directed to Virginia in 2000, continued through defendants' in-person travel and interactions with ITS's predecessor company in Virginia in 2003 with regard to the licensing arrangement and the now-infringed materials, and continued through years of ordering and licensing activity through 2008, and purchasing inquiries in 2010. The defendants now continue to use five Virginia-based distribution partners for the infringing works today.

**1.  The Defendants' Access, Orders, and Previous Involvement with ITS and the ITS Works Has Always Been Directed to Virginia.**

The defendants' interaction with ITS has at all times been directed to Virginia and has at all times been specific to works sued upon, or predecessor versions of those works. The defendants' transactions with ITS began when defendant Carlos Lopez, owner and president or chief executive officer of both LPTA and Lopez Tax, first purchased training materials in 2000 from Peoples Income Tax, Inc. ("Peoples"), a Virginia company with common ownership to ITS. See Ex. 2, McCabe Declaration at ¶ 3. (ITS is a spin-off company of Peoples, specific to the training publications business, with all rights thereto assigned to ITS). Id. Following that, Mr.

Lopez and Lopez Tax purchased additional items from ITS from 2000 to 2008, with orders submitted to Virginia, and with payments submitted to Virginia.  <u>See</u> Ex. 2, McCabe Declaration at ¶ 4 and Exhibit A.  In 2003, Mr. Lopez traveled to Virginia for several days and attended a retreat presented by Peoples, at Peoples' offices in Richmond.  On that occasion, Lopez purchased training materials from Peoples.  <u>See</u> Ex. 2, McCabe Declaration at ¶ 5.

The defendants' licensing and access to these earlier versions of the infringed works was a result of this specific, deliberate, and repeated course of actions directed to Virginia.

Before they determined to profit by infringement rather than to remain a legal licensee, the defendants were appreciative customers of ITS and were complimentary of ITS publications. In a 2005 email to Peoples' Terry Judge, defendant Kristeena Lopez offered an endorsement of the Peoples Tax/ITS works, stating "the format is easy to read and understand.  All the teaching aids are included ….  The layout of the chapters flow easily to make complex concepts simple to teach."  <u>See</u> Ex. 2, McCabe Declaration at ¶ 6 and Exhibit B.

## 2. Five Virginia Training Sites Are Listed on the LTPA Web Site.

On its web site at www.latinotaxpro.org[1], defendant LTPA lists five training sites in Virginia.  They are:

1.  M&E Tax and Financial, Alexandria, Virginia

2.  CDL, Inc., Harrisonburg, Virginia

3.  Sea Tax Services, Alexandria, Virginia

4.  Latin Tax, Inc., Alexandria, Virginia

5.  Markios Acct. Tax Service, Woodbridge, Virginia

---

[1]     Despite the ".org" extension on its web site and the word "Association" in its name, ITS believes LTPA to be a for-profit limited liability company.

<u>See</u> Ex. 2, McCabe Declaration at ¶ 7 and Exhibit C (pages 1 and 2), listing these training sites on LTPA's web site.

Through each of these Virginia training sites, LTPA offers products and services, including marketing kits, instructor training manuals, instructor lesson plans, and other materials. <u>See</u> Ex. 2, McCabe Declaration at ¶ 8 and Exhibit C (page 3).  This is a persistent course of business initiated and maintained by LTPA in Virginia.  LTPA's business in Virginia, through its five member training sites is "continuous and systematic," and related specifically to sales and licensing of the infringing materials that are the subject matter of this litigation.  The training sites in Virginia and elsewhere by LTPA to distribute the infringing works were part of LTPA's training sites strategy for distribution of the infringing works.  The training sites' purposes and business relationships are shown on LTPA's materials promoting the program to these five Virginia businesses and to others.  <u>See</u> Ex. 2, McCabe Declaration at ¶ 9 and Exhibit 9.  In those materials, LTPA touts the high quality of the instructor training and student training course, largely or solely comprised of the infringing works, and the ongoing support ("You're Not Alone – Instructor Support Included") that LTPA has offered into and across Virginia, and that LTPA has sold and now services for its five Virginia Training Sites.  <u>Id.</u>

In a 2011 email campaign, LTPA sent to Virginia email addresses (<u>see</u> Ex. 2, McCabe Declaration at ¶ 10), and likely to others across the country, a promotional email that explained its Training Sites initiative and solicited other sites.   The broadcast email contained the following:

Are You Ready for the new IRS Competency Exams?

IRS Competency Exams begin this summer and the time to begin studying is NOW. We have established a network of Training Sites across the nation to give you the training that you need to successfully pass the new IRS Competency Exams as required by the new Preparer Registration Program - IRS Publication 4832. Looking to get your entire office ready? Start your OWN training site.

See Ex. 2, McCabe Declaration at ¶ 10 and Exhibit E.

The five training sites, being used to sell and distribute training materials that include the infringing works, are actions by LTPA and Mr. and Mrs. Lopez that are "purposefully directed" at Virginia. Because these LTPA Training Sites teach from and further distribute training materials that are infringing on ITS's copyrights, ITS's claims of infringement are related to, and even "arise out of these activities" that are directed to Virginia, as the test is stated in Burger King Corp.

Licensing relationships and distribution partnerships in the forum state, such as LTPA's five Virginia training sites, are sufficient to establish personal jurisdiction over infringement defendants. Several patent cases have found personal jurisdiction where the allegedly infringing products marketed and sold in the forum state. See Nova Biomedical Corp. v. Moller, 629 F.2d 190 (1st Cir.1980) (holding that out-of-state patent holder could be subject to long-arm jurisdiction given patent holder's extensive and on-going contacts with forum through licensing agreement for patented product); see also Genetic Implant Systems, Inc. v. Core-Vent Corp., 123 F.3d 1455 (Fed.Cir.1997); Akro Corp. v. Luker, 45 F.3d 1541 (Fed.Cir.1995);

### 3. Lopez Tax Agreed to Be Sued in Virginia.

Apart from the continuous and systematic Virginia business of its co-defendant LTPA, Lopez Tax has specifically agreed to be sued in this district. In a license agreement dated May 8, 2007, defendant Kristeena Lopez, on behalf of Lopez Tax, signed a license agreement giving Lopez Tax limited permission for a specified time period to use the training publications it had licensed from ITS. See Ex. 2, McCabe Declaration at ¶ 11. The license agreement stated that it was a "nontransferable, non-assignable license," meaning that even for the one-year period where those license rights were granted, Lopez Tax could not include LTPA in any rights or permissions for the relevant works. See Ex. 2, McCabe Declaration at ¶ 11 and Exhibit F at ¶ 1.

Further, and most relevant to this jurisdictional phase of the proceedings, Lopez Tax agreed in 2007, and again in 2008, to be sued in the Eastern District of Virginia.

> The parties to this agreement hereby submit to the jurisdiction of the Federal and state courts located in Richmond, Virginia, in any action or proceeding arising out of, or relating to, this Agreement, and the parties waive all objections based on forum non conveniens with respect to such courts. The parties agree that all claims in respect to such action or proceeding may be heard and determined only in such courts and they agree not to commence any legal or equitable proceeding in any other court.

See Ex. 2, McCabe Declaration at ¶12 and Exhibit F at ¶ 7.

Again on June 30, 2008, Lopez Tax, again by the hand of Kristeena Lopez, executed an agreement allowing itself to be sued in the Eastern District of Virginia for "any action or proceeding arising out of, or relating to" the license agreement, waiving forum non conveniens arguments, and agreeing not to "commence any legal or equitable proceeding in any other court." See Ex. 2, McCabe Declaration at ¶ 13 and Exhibit G at ¶ 6. Lopez Tax also agreed again in 2008 to "waive all objections based on venue or forum non conveniens with respect to such courts." Id.

This action arises out of or relates to these license agreements, because the defendants' infringement of the licensed works and successor versions of those works started where the license rights violated. Lopez Tax's transferring the ITS works to LTPA is a violation of the license agreements. Lopez Tax's continued use of the ITS works beyond the one-year license term is a violation of the license agreements.

### 4. The Defendants Continued to Reach Out to ITS in Virginia with Regard to the Infringed Works and Defendants' Infringing Works.

As the defendants scaled up their infringement, they directed additional purposeful activity to Virginia in order to assess the cost of ITS's publications and licenses, either to establish their own pricing for the infringing works, or to weigh the cost of complying with the

copyright laws.  This cost assessment came in an April 30, 2010 email, when defendant Kristeena Lopez sent an inquiry from her Lopez Tax email address to ITS employee Gloria Gray in Richmond concerning the selection, pricing, and training material resale rights for Lopez Tax. See Ex. 2, McCabe Declaration at ¶ 14 and Exhibit H.  ITS supplied the requested information to Mrs. Lopez and Lopez Tax.  Id.  Lopez Tax did not follow up to make any licensing purchases, as they had done repeatedly since 2000.  See Ex. 2, McCabe Declaration at ¶ 14.  The defendants had all they needed at that point, either to set their own pricing of their illegally copied publications, or to decide that staying within the law involved costs they did not want to pay. The defendants opted to use and resell infringing works rather than purchase materials and/or license rights from ITS.

These facts, taken together, satisfy ITS's obligation to state a *prima facie* case for specific personal jurisdiction over the defendants.  As the Fourth Circuit has held, the question of specific personal jurisdiction and the "minimum contacts" test is based on the idea that if a party "enjoys the privilege of conducting business within a state," it also "bears the reciprocal obligation of answering to legal proceedings there."  CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 293 (4th Cir. 2009).

The facts in CFA Institute are the mirror image of the facts in this case.  The Fourth Circuit found purposeful availment and specific personal jurisdiction where a defendant's former and long-standing collaboration with the plaintiff was an integral element of the dispute.  The facts there were:

> [Defendant} repeatedly reached into Virginia to transact business with the [plaintiff], invoking the benefits and protections of Virginia law.  Furthermore, [defendant] continued to invoke those benefits and protections when it corresponded and collaborated with the [plaintiff] over a period of approximately thirteen years.  As such, [defendant] purposefully availed itself of the privilege of transacting business in the Commonwealth.

<u>Id.</u> at 295.  Except that ITS and the defendants worked together for eight or nine years, instead of 13 years as in <u>CFA Institute</u>, the facts in this case are exactly the same, even including an in-person meeting in Richmond early in the relationship, a fact common to this matter and <u>CFA Institute</u>.  <u>Id.</u> at 294-95.

In <u>CFA Institute</u>, the defendant contacted the plaintiff, which "sparked ongoing business transactions, by which [defendant] repeatedly reached into Virginia to transact business with [plaintiff], invoking the benefits and protections of Virginia law."  <u>Id.</u> at 295.  Where such contacts are present, purposeful availment will be found regardless of which party initiated the contact at the beginning of the relationship.  <u>Christian Science Bd. of Dirs. v. Nolan</u>, 259 F.3d 209, 216 (4th Cir. 2001).

The same course of conduct that convinced the court in <u>CFA Institute</u> that minimum contacts existed also satisfied the inquiry into "arising out of" for specific personal jurisdiction. <u>CFA Inst.</u>, 551 F.3d at 295.  The parties' previous collaboration included license agreements, as it does in this case.  <u>Id.</u>  And in <u>CFA Institute</u>, as here, the later infringement of rights under the license agreement were the subject of the controversy.  <u>Id.</u>

## C.  The Virginia Court Has General Personal Jurisdiction Over the Defendants.

Based on the foregoing, ITS believes that specific personal jurisdiction exists.  Should the Court believe it necessary to look as well at general personal jurisdiction, the foregoing considerations, together with other factors, establish general personal jurisdiction.  For the Court to exercise general personal jurisdiction, the defendants' activities must be "continuous and systematic" in Virginia, including "fairly extensive" minimum contacts.  <u>Nichols v. CD. Searle & Co.</u>, 991 F.2d 1195, 1199 (4th Cir. 1993).  For the most part, the defendants merge their discussion of specific personal jurisdiction and the Virginia long-arm statute.  The Eastern District of Virginia has previously considered and rejected such an approach, as inconsistent with

the Virginia long-arm statute and the precedents of the Supreme Court of Virginia and the Supreme Court of the United States.   Coastal Video Communications v. Staywell Corp., 59 F.Supp.2d 562 (E.D. Va. 1999).   The Virginia long-arm statute need not be satisfied for a Virginia court to exercise general jurisdiction over the defendants.   As the Eastern District of Virginia has held

> To require the Virginia long-arm statute to be satisfied before there can be a finding of general jurisdiction would render the concept of general jurisdiction a nullity.   Once the long-arm statute is satisfied, the court has specific, personal jurisdiction over the person and there is then no need to proceed further and consider the question of general jurisdiction.   The Supreme Court has specifically defined specific and general jurisdiction, and, by definition, general jurisdiction clearly exists only when the cause of action does not arise from defendant's contacts with the forum state.

Id. at 568-69 (citing Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868 (1984).   Further, "the Virginia Supreme Court held that a corporation that 'regularly and systematically does business in Virginia' may be subject to personal jurisdiction 'on a cause of action arising out of events unrelated to the business conducted in the Commonwealth.'"   Coastal Video Communications v. Staywell Corp., 59 F.Supp.2d 562 (E.D. Va. 1999) (citing Witt v. Reynolds Metals Co., 240 Va. 452, 397 S.E.2d 873, 876 (1990)); see also Verosol B.V. v. Hunter Douglas, Inc., 806 F.Supp. 582, 591 (E.D. Va. 1992) (applying general jurisdiction principles to business activities in Virginia where plaintiffs' cause of action did not arise out of defendant's shipment of goods into Virginia).

### 1.   Five Virginia Training Sites and a Virginia Member of the LTPA Partners Program Show a Persistent Course of Business in Virginia.

Through each of the five Virginia training sites discussed above, LTPA offers products and services, including training materials and infringing works.   See Ex. 2, McCabe Declaration at ¶ 15 and Exhibit I ("Training Site Products").   This is a persistent course of business initiated and maintained by LTPA in Virginia.   Even if the Court has its doubts about whether ITS's

claims arise out of the defendant's Training Site relationships, LTPA's business in Virginia, through its five member training sites is "continuous and systematic."

In addition to the section of its web site listing its Training Sites in Virginia and elsewhere, LTPA also lists several partners with whom it cooperates to offer products or services.  One of these ongoing partner relationships is a Virginia company, Latin Tax, Inc., located in Alexandria.  See Ex. 2, McCabe Declaration at ¶ 16 and Exhibit J.  The LTPA web site promotes the services and shares the contact information of Latin Tax, Inc., as part of LTPA's affiliate program.  The affiliate or membership programs offered by LTPA are shown on LTPA's materials promoting this program to businesses in Virginia and elsewhere, including to Latin Tax.  See Ex. 2, McCabe Declaration at ¶ 17 and Exhibit K.  In those materials, LTPA touts discounts on "Tax Education products," which are the instructor training and student training works, largely or solely comprised of works infringing ITS's copyrights, and state that "Your tax practitioner clients need training and education to fulfill their IRS requirements."  Id. This affiliate program and the participation of Alexandria's Latin Tax is another example of LTPA's ongoing business activities in Virginia.

### 2.  The Defendants Have Solicited Other Business in Virginia.

Offering slightly lower prices on its infringing publications than ITS offers for its own works, LTPA has repeatedly solicited business from long-time ITS customer MRS Tax of Woodbridge, Virginia.  See Ex. 2, McCabe Declaration at ¶ 18.  LTPA has called MRS's owner, Thorman Jerry, in Virginia, starting in 2010, and has delivered to MRS in Virginia in 2011 samples of training materials offered by LTPA, in an effort to convince MRS Tax to purchase materials from LTPA.  Id.  Mr. Jerry described these materials to ITS in 2011.  Id.

These facts, taken together with the course of conduct described in the specific jurisdiction section above, satisfy ITS's obligation to state a *prima facie* case for general personal jurisdiction over the defendants.

### D. The Defective Service of Process Argument is Dependent on the Defendants' Jurisdictional Arguments.

In addition to the jurisdictional issues, the defendants also assert that service of process was defective.  The claim of defective service of process claim is predicated only on the notion that the service of process affidavits must be invalid because there is no basis for jurisdiction. This argument is circular, and merely repetitive of the jurisdictional claims.

If as the facts and legal authorities demonstrate, personal jurisdiction exists, service of process via the Secretary of the Commonwealth is satisfactory under the Virginia long-arm statute.   Federal Rule of Civil Procedure 4(k)(1)(A) provides personal jurisdiction over a defendant in the manner provided by state law.  <u>Diamond Healthcare of Ohio</u>, 229 F.3d 448, 450 (4th Cir. 2000).

> Applying the constitutional limitations on state service of process incorporated in Rule 4(k)(1)(A), we understand that when a defendant's contacts with the forum state are continuous and systematic, irrespective of whether the transaction in question had sufficient contacts with the state, a court may exercise general personal jurisdiction over the defendant.   In the absence of continuous and systematic contacts, a court may still exercise specific personal jurisdiction when the contacts relate to the cause of action and create a substantial connection with the forum state.

<u>Id.</u> (internal citation omitted).  These standards are the same ones discussed above, in parts I and II of this memorandum.

Virginia's long-arm statute is satisfied in at least three ways.  As described earlier in this memorandum and in the McCabe Declaration, the defendants have transacted business in Virginia, per Va. Code § 8:01-328.1(A)(1).  They have "caused tortious injury by an act or omission in [Virginia]" under Va. Code § 8:01-328.1(A)(3).  They have "regularly solicit[ed]

business" in Virginia and engaged in a "persistent" course of conduct involving Virginia, and subject to discovery in this matter, have likely derived "substantial" revenue from Virginia under Va. Code § 8:01-328.1(A)(4), in connection with their ongoing commercial relationships here.

Reviewing the service of process points as presented in the defendants' memorandum, it is clear that multiple prongs of the Virginia Long-Arm statute, as well as Constitutional Due Process, are satisfied.

## II.   THE DEFAMATION CLAIM IS A WORK OF FICTION, AND DOES NOT SATISFY RULE 12 OR THE DECLARATORY JUDGMENT ACT.

### A.  Count II of the Complaint Should Be Dismissed for Failure to State a Claim.

Count II of the Plaintiffs' suit, seeking declaratory judgment with regard to defamation, should be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Under 12(b)6), dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 562 (2007).  The allegations made must be (1) "sufficiently detailed to give fair notice to the opposing part of the nature of the claim so that the party may effectively defend against it" and (2) sufficiently plausible that "it is not unfair to require the opposing party to be subjected to the expense of discovery."  Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

The Plaintiff's overly broad pleadings regarding defamation do not provide sufficient information to allow ITS to prove or disprove defamation.  Plaintiff's allegations do not identify any allegedly damaging statements that could provide the basis for the alleged defamation

controversy.  For all of its breadth, the Complaint identifies no particular statement by its maker, the parties to whom it was communicated, the time and place of its communication, the means of its communication or other factors that could be proven or disproven.  Perhaps this is because there is no actual case or controversy.  If there were, the Plaintiffs would be able to identify the defamatory statements that are before the Court for decision.

The defamation declaratory judgment count seeks declaratory relief where no case or controversy exists, claiming very broadly that ITS has threatened claims of defamation, about which ITS knows nothing at all.  See Ex. 2, McCabe Declaration at ¶ 19.  No officer, employee, attorney, or other agent has had any communication or claims whatsoever with any of these defendants with respect to any defamation or related matter.  Id.  The allegations of the defamation portion of this suit lack any reference to any particular statement, publication, or other actionable basis for a defamation claim by ITS or declaratory judgment case by the Plaintiffs.  This can only be a strategic contrivance, in an effort to make this proceeding appear to be something other than the mirror image of the first-filed matter.

**B. Count II of the Complaint Should Be Dismissed for Failure to Satisfy the Declaratory Judgment Act.**

In addition to the shortcomings of the pleading under Rule 12(b)(6), the defamation declaratory judgment count also fails under the Declaratory Judgment Act at 28 U.S.C. § 2201. Under the Act, a party cannot simply create a controversy out of thin air for the sake of injecting extraneous claims.  A declaratory judgment plaintiff bears the burden of showing an "actual controversy."  Proofpoint, Inc. v. Innova Patent Licensing, LLC, 5:11-CV-02288, 2011 WL 4915847 (N.D. Cal. 2011); Crossbow Tech., Inc. v. YH Tech., 531 F. Supp. 2d 1117, 1120 (N.D. Cal. 2007).  ITS knows of no defamatory statements, and certainly has not alleged defamation or threatened any such claim.  See Ex. 2, McCabe Declaration at ¶ 19.  Jurisdiction is proper only

where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Proofpoint</u>, 2011 WL 4915847 (citing <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127 (2007).  For the defamation claim, Plaintiffs have failed to show that there is any actual controversy, because there is not.

### III.  THE PLAINTIFFS CAN SUE THEIR INSURER WHEREVER THEY CHOOSE.

The defendants have also filed a notice of a "related" claim.  That is a coverage dispute against the insurer of one or more of the Plaintiffs, the National Fire Insurance Company of Hartford.  In case the "related matter" is held up to this Court as a reason to retain jurisdiction over this matter, ITS notes that the insurance coverage case is neither an impediment or a relevant factor.  The insurer can be sued in a different district than ITS's first-filed suit, or the Plaintiffs could choose to sue the insurer in the Eastern District of Virginia, along with the first-filed suit.  The issues of fact and law in that matter are distinct from this copyright infringement case.  Issues of insurance coverage such as a duty to defend, and coverage of the ultimate liabilities are determined by comparing the claims made to the contract of insurance coverage. Those insurance contract matters are not the same, and need not be decided together with, the substantive issue of copyright infringement.

If there were some legitimate reason that the insurance coverage suit must proceed in the same district as the case for copyright infringement, the defendants' insurer can be haled into court in Virginia.  The National Fire Insurance Company of Hartford, is no stranger to Virginia or this district.  It has been involved as a party to at least the eight recent matters in the Eastern District of Virginia, as shown by a search of the Court's PACER system:

## IV.  CONCLUSION

For the reasons outlined above, Defendant respectfully requests that the Court dismiss Count I of the Complaint, regarding copyright infringement, or in the alternative, (1) transfer it to the Eastern District of Virginia where the first-filed suit is already pending, or (2) stay this action pending decision of the Eastern District of Virginia on the jurisdictional challenges in that district court.

June 20, 2012

Respectfully Submitted,

__/s/ Nicholas Ranallo_____
Nicholas Ranallo, Attorney at Law (SBN 275016)
371 Dogwood Way
Boulder Creek, CA 95006
(831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

Christopher E. Gatewood
(*Pro hac vice pending*)
Threshold Counsel, PC
1905 Huguenot Road, Suite 200
Phone: (804) 677-0947
Fax:    (804) 482-2641
chris@thresholdcounsel.com

*Attorneys for Defendant The Income Tax School, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of June, 2012, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

By:____/s/Nicholas Ranallo____
Nicholas Ranallo